### BALL *v.* DENNISON.

### *Notice of non-payment.*

When a promissory note has been dishonored by the maker, the indorser is not liable to pay it, if the holder neglects to give him due notice of non-payment. What is due notice is, in Pennsylvania, a matter of fact to be decided by the jury. (*a*)

THIS was an action brought by the indorsee against the indorser of a promissory note for $5000, made by Samuel Emory, on the 26th of December 1795, and payable 65 days after sight. The maker failing to pay the note, it was regularly protested, on the 3d of March 1796 ; and the only question agitated upon the trial, was, whether reasonable notice of the non-payment was given to the indorser, or due diligence employed to give it ?

The material facts were these : Emory and Dennison had purchased from the managers of the Schuylkill canal lottery, a number of tickets, for which a note was given to the president, the plaintiff in this action. The purchasers settled their accounts of the speculation, before the note became due, in consequence of which Emmory was bound to pay the note ; but when it became due, Dennison agreed to continue his indorsement for the accommodation of Emory, though the joint interest had ceased ; and

---

(*a*) See Donaldson *v.* Means, *ante,* p. 109 ; Bank of North America *v.* Pettit, *ante,* p. 127.

Ball v. Dennison.

the plaintiff, by way of renewal, at the instance of Emory, took the note on which the present action was instituted. Dennison was not a permanent inhabitant of Philadelphia, but was domiciled at Havre de Grace, in Maryland. He had, however, an agent in Philadelphia, to whom the banks, in consequence of written instructions, delivered the notices of his paper engagements, payable there, on which he was maker (not indorser), during the years 1795 and 1796 ; and who, constantly, for that period, made the necessary payments ; nor would he have hesitated (he declared) to pay the present note, if he had been informed of the default of the maker. It appeared likewise, that Dennison was, occasionally, in the city of Philadelphia, in the months of February, March, April, May, June, August and September 1796 ; and *in the month of May, Emory informed him [*164 of the protest ; but at the same time, declared that he had made preparation to discharge the note. On the other hand, it was proved, that after the default of the maker, particular and repeated inquiry was made for the indorser, by the notary, as well from Emory as others ; that the indorser was not then in Philadelphia, and the notary did not himself know that he had an agent here, for such purposes, though he knew there were transactions of business between him and the person who was said to have been his agent ; that the notary heard Dennison lived at Havre de Grace, but at the same time, was told, he had gone to the eastward ; that as soon as the plaintiff understood that Dennison was in the city (about six weeks or two months after the protest), the plaintiff's clerk called on Dennison, mentioned the facts, and demanded payment ; when Dennison said, that he had received no part of the proceeds of the lottery-tickets ; but that he would urge Emory to discharge the note.

The *defendant's* counsel contended, on these facts, that there was not reasonable notice of the protest of the note, nor due diligence to give it : that under the circumstances of the case, the defendant was not under a moral obligation to pay the note, and might fairly take advantage of the strict rule of law, according to 1 Dall. 234, 252, 270 ; 2 Ibid. 158, 192 ; that no notice was given to the indorser, until May 1796, though he was occasionally here, before that time, and subsequent to the protest ; though he had an agent here ; and though he lived in a neighboring state, to which the post would have carried notice, in the course of a few days ; and that actual knowledge of non-payment is not sufficient to charge an indorser, unless the information is received promptly from the holder, with notice that he looked to the indorser for payment: Kyd on Bills, 79 ; 1 T. R. 167 ; 5 Burr. 2670 ; 1 T. R. 712.

The *plaintiff's* counsel insisted, that as the private arrangement between Dennison and Emory was unknown to the plaintiff, his claim upon the defendant, in morality, as well as law, could not be impaired by it ; that the law was not controverted, on the authority of the cases cited ; but still it left the matter of fact to be ascertained, what was reasonable notice of protest, under all the circumstances of the case? That the first important feature of the case exhibits the defendant as a non-resident of Philadelphia, a mere transient visiter ; that notice sent south to Havre de Grace, when it was known he had gone north, would have been useless and idle ; that the notary did not know, and the evidence is, otherwise, uncertain, in the

Ball v. Dennison.

instance of the defendant's being an indorser, that he had any agent in Philadelphia : and that due and diligent inquiry was made for the indorser in Philadelphia, where the consideration arose, and the note was given. *As to the cases cited for the defendant, they are susceptible of answers, easily distinguishing them from the present case. Thus, in 1 Dall. 234, 270, the bill was kept two years and a half ; the indorser lived in Poughkeepsie, only 130 miles distant; he was a man of note, in extensive business, and actually had some transactions with another of the indorsers. In 1 Dall. 252, the note was protested for non-payment on the 12th of June 1786 ; on the 5th of July and 23d of August, the plaintiff received partial payments from the maker ; and it was not until after the last date, when the maker had become embarrassed, that notice was given to the indorser ; who, during the whole time, lived and kept a counting-house in Philadelphia. In 2 Dall. 158, both parties lived in Philadelphia ; and the jury thought three or four days was not too late to give notice. In 2 Dall. 192, the bill of exchange was drawn in September 1781, presented and refused acceptance in November 1781, and protested for non-payment in August 1782 ; but no notice was given to the indorser until the beginning of the year 1790. When the bill was presented, the drawee had funds of the drawer in his hands ; but he had paid the amount to the drawer's agent, who died, and whose wife had lost the money.

Shippen, Justice.(a)—The cause depends upon one point, which is a matter of fact. The general law is, that when a promissory note is dishonored by the maker, the indorser becomes immediately liable ; and the holder is entitled to recover the amount from him, unless he is discharged by the act of the holder, either in giving further time or credit to the maker ; or in neglecting to give the indorser due notice of the non-payment. This notice is indispensable : so much so, that it is immaterial, whether the maker becomes insolvent before the notice, or not. Still, however, what constitutes due notice, is a point to be settled. In England (where it is regarded as a question of law), the rule is strict and positive, that the notice must be given on the next day, if the parties live in the same place ; and by the next post, if they live in different places. But in Pennsylvania, it has hitherto been regarded as a matter of fact, to be decided by a jury, under all the circumstances of each case, as it arises. In deciding it, however, the jury will always be governed by a sound and reasonable discretion. They will allow but a short time for giving notice, where the parties reside in the same town ; for, six weeks, in such a case, would certainly be too long ; and for giving notice in different parts of the country, they will bring into the calculation of a reasonable time, the facility of the post, the state of the roads, and the dispersion of the inhabitants in relation to the post-towns.

*With these prefatory remarks, let us review the circumstances of the present case. The note was duly protested for non-payment ; the notary, at the same time made diligent inquiry after the indorser ; particularly from the maker, who was most likely to possess the necessary information. He heard that the indorser lived at Havre de Grace, but was then gone to the eastward. Proof has also been given of Dennison's repeatedly

_____

(a) Shippen and Smith, Justices, were the only judges on the bench, at the trial of this cause.

visiting Philadelphia, after the protest ; but it is not proved, that the plain tiff was acquainted with the fact ; and without that proof, he cannot be legally charged with *laches*. It is proved, that J. B. Bond was Dennison's general agent in Philadelphia ; but it is not proved, that he was a public known agent ; nor (which is again essential to affect the plaintiff's claim) that the plaintiff was apprised of the agency. As to the fact that Dennison lived at Havre de Grace ; and as to the argument, that notice ought to be given, wherever the indorser lives ; it is important to remember, that the commencement of the transaction was in Philadelphia ; that the note was dated there ; and that all the parties contemplated Philadelphia as the place of payment. Besides, it would interrupt the negotiability of notes, and greatly embarrass the general operations of commercial credit, if an indorser was entitled to notice, on the strict terms suggested, though he lived in the East, or the West Indies ; or though he was a mere itinerant, constantly shifting the place of his abode, and the scene of his business. It is, there-fore, an object of leading influence, in the decision of this cause, to consider whether, under all the circumstances in proof, the plaintiff was bound to inquire for the defendant, beyond the city of Philadelphia ? The case of *Steinmetz* v. *Curry*, 1 Dall. 234, 270, ought not to be a guide on the occa-sion ; for there, the bill was kept by the holder for two years and a half, without giving notice to an indorser, who was known to reside constantly at Poughkeepsie, in New York. But upon the whole, it appears to the court, that the plaintiff did make a prompt inquiry for the indorser, in the city of Philadelphia ; and that the defendant has not sufficiently estab-lished those facts, which would have made it incumbent upon him, either to send notice to Havre de Grace, or to serve notice upon the agent in Phila-delphia. If the jury concur in the opinion, they will find for the plaintiff ; but if they do not, it is their right, and their duty, to find for the defendant.

Verdict (delivered without the jury's retiring from the bar) for the plaintiff, $6051.13, and six cents costs.